Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard Street, Suite 780
Woodland Hills, CA 91367
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RYOO DENTAL, INC. d/b/a RYOO DENTAL and RICHARD MARCUS, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>OCO BIOMEDICAL, INC.,<br><br>Defendant. | Case No.: 8:16-cv-001626-DOC-KES<br><br>**PLAINTIFFS' NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>Judge:  Honorable David O. Carter<br><br>**DATE:**          JUNE 4, 2018<br>**TIME:**          8:30 A.M.<br>**COURTROOM:** 9D |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Monday, June 4, 2018 at 8:30 a.m., before the United States District Court, Central District of California, Courtroom 9D, 411 West Fourth Street, Santa Ana, California 92701 (9th Floor) plaintiffs Ryoo Dental and Richard Marcus ("Plaintiffs") will move this Court for an order granting final approval of the class action settlement as detailed in Plaintiffs' Memorandum of Points and Authorities.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the declarations and exhibits thereto, the Complaint, all other pleadings and papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.

Date: May 21, 2018                    **Law Offices of Todd M. Friedman, PC**

By: */s/ Todd M. Friedman*
Todd M. Friedman
*Attorneys for Plaintiffs*

1

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................1

II. STATEMENT OF FACTS ...................................................................3

A. Factual Background .......................................................................3

B. Proceedings to Date ......................................................................3

C. Statement of Facts.........................................................................4

1. The Settlement Class ................................................................4

a. The Settlement Class .........................................................4

b. Class Membership Determination......................................5

2. Settlement Payment ..................................................................5

3. Monetary Benefit to Class Members and Class Notice ...................6

III. ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL................6

A. CAFA Notice................................................................................6

B. Direct Mail Notice Provided..........................................................6

C. Formal Notice Posted On The Settlement Website..............................7

D. Objections, Opt Outs, and Settlement Payouts ..................................8

1. Settlement Checks and Credits.....................................................8

2. Class Representative's Incentive Payment.......................................8

3. Attorneys' Fees and Costs.............................................................9

4. Administrator's Expenses For Notice and Administration .............10

IV. ARGUMENT....................................................**Error! Bookmark not defined.**

A. Final Approval of The Proposed Settlement Is Warranted. ................10

1. The Strength of The Lawsuit And The Risk, Expense, Complexity, And Likely Duration of Further Litigation ...............................12

2. The Amount Offered In Settlement................................................13

i

**PLAINTIFFS' NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

3. Class Members were provided with the best notice possible, which afforded them an opportunity to choose whether to participate in the Settlement ........................................................................16

4. The Extent of Discovery Completed ................................................17

5. The Experience And Views of Class Counsel ...............................18

6. The Reaction of Class Members To The Settlement .....................18

V. CONCLUSION ........................................................................................19

## TABLE OF AUTHORITIES

**Cases**

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. Mar. 20, 2015) .10

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ..................................20

*Chen v. Allstate Insurance Co.*, 819 F.3d 1136 (9th Cir. 2016) ..........................4, 6

*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ......................................21

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980) ................13, 20

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ......................................................12

*In re Diamond Foods, Inc.*, 2014 U.S. Dist. LEXIS 3252 (N.D. Cal. Jan. 10, 2014) ........................................................................................................................9

*In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS 15174 (S.D. Cal. Jan. 23, 2012) .......13

*In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436 (E.D. Pa. 2000) ....16, 18

*In re Mego Fin'l Corp. Sec. Litig.*, 213 F. 3d 454 (9th Cir. 2000) ...................16, 18

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) ........16

*In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934 (9th Cir. Feb. 27, 2015) ......................................................................................................................10

*In re Toys R Us – Delaware, Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litigation*, 295 F.R.D. 438 (C.D. Cal. Jan. 17, 2014) ........................10

*In re Warner Communications   Sec. Litig.*, 618 F. Supp. 735 (S.D. N.Y. 1985) ..12, 19, 21

*Jones v. GN Netcom, Inc.* (*In re Bluetooth Headset Prods. Liab. Litig.*), 654 F.3d 935 (9th Cir. Cal. 2011) ........................................................................................13

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998) .................20

*Luna v. Shac*, 122 F.Supp.3d 936 (N.D. Cal. 2015) ...............................................14

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F.Supp. 819 (D. Mass. 1987) ...............................................................................................................13, 20

iii

**PLAINTIFFS' NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

*National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) 16, 18

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615 (9th Cir. 1982) ............................................................................12

*orrisi v. Tucson  Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993)..............................13

*Radcliffe v. Experian Info. Solutions, Inc.*, 2013 U.S. App. LEXIS 9126 (9th Cir. Mar. 4, 2013) ........................................................................................................10

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ......................12

*Silber v. Mabo*n, 18 F. 3d 1449 (9th Cir. 1994).......................................................18

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ...............................................12

*Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 44855 (N.D. Cal. Mar. 31, 2014) ................................................................................................................21

*Wilson v. Airborne, Inc.*, 2008 U.S. Dist. LEXIS 110411 (C.D. Cal. Aug. 13, 2008) .......................................................................................................................8

**Statutes**

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*..................2, 3, 14, 15

**Other Authorities**

2 Newberg on Class Actions (4th Ed. & Supp. 2002) ............................................20

David R. Hodas, Enforcement of Environmental Law in A Triangular Federal System: Can Three Not Be A Crowd When Enforcement Authority Is Shared by the United States, the States, and Their Citizens?, 54 Md. L. Rev. 1552 (1995) ..2

Manual for Complex Lit., Fourth.............................................................................20

**PLAINTIFFS' NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs, Ryoo Dental and Richard Marcus (hereinafter referred to as "Plaintiffs" or "Class Representatives"), individually and on behalf of the "Settlement Class" (as defined below) hereby submits his Motion for Final approval of the proposed settlement (the "Settlement") of this action (the "Action").[1] Defendant, OCO Biomedical, Inc. (hereinafter referred to as "Defendant" or "OCO") does not oppose Plaintiffs' Motion.[2]   This Settlement provides for significant monetary relief for Class Members allegedly harmed by Defendant's alleged violations of the Telephone Consumer Protection Act ("TCPA"), which Settlement merits final approval by the Court. The settlement agreement ("Settlement Agreement" and/or "Agreement" and/or "Agr.") provides for a considerable financial benefit of $275,000 ("Settlement Fund") to the approximately 3,847 Settlement Class Members.

The Settlement Fund to be paid by OCO is an all-in, non-reversionary payment.  Under the Settlement, each Class Member will receive a pro rata award from the Settlement Fund.  Class Members are required to submit a claim form in order to receive payment, and receive a pro rata share of the settlement based on the number of claims filed.  The Class Members were informed of the Settlement by Direct Mail notice, the Long Form Notice posted on the Settlement Website.

Due to the economics of individually suing for minimal statutory damages of $500-$1500, few of the Class Members would likely be able to obtain such recovery on their own.  Currently, after subtracting the attorneys' fees and costs, the incentive award to the Class Representative, and the administrative costs from the Settlement Fund, each of the Class Members who submitted a valid claim form is entitled to a

---

[1]  Plaintiff and Defendants are collectively referred to as the "Parties."

[2]  Unless otherwise specified, defined terms used in this Memorandum are intended to have the meaning ascribed to those terms in the Agreement.

Settlement Payment, in the amount of approximately $436.15. See the Declaration of Todd M. Friedman ("Friedman Decl.") at ¶ 9.[3]

This Settlement also creates an incentive for Defendant and other businesses to comply with the TCPA, which benefits the Class Members, consumers in general, as well as compliant competitive businesses. *See* David R. Hodas, Enforcement of Environmental Law in A Triangular Federal System: Can Three Not Be A Crowd When Enforcement Authority Is Shared by the United States, the States, and Their Citizens?, 54 Md. L. Rev. 1552, 1657 (1995) ("[A]llowing a violator to benefit from noncompliance punishes those who have complied by placing them at a competitive disadvantage.  This creates a disincentive for compliance.").

Under the proposed settlement, reached with the guidance of Judge West, and which was already granted preliminary approval of the Honorable Court, Defendant will contribute $275,000 towards a common fund, which will be comprised of cash distributions to Settlement Class Members, Attorneys Fees, and Costs of Suit. Settlement Class Members were required to submit a claim form to participate in the Settlement.  Defendant was in possession of information relating to Class Member identities, names, addresses, and phone numbers, and has provided this information to Kurtzman Carson Consultants ("KCC" and/or the "Claims Administrator").  *See* the Declaration of H. Jacob Hack ("Hack Decl.").

The settlement that has been negotiated by Class Counsel is an outstanding result for the Class, given that Class Members who made claims will be getting approximately $436.15 and damages under the TCPA are $500.  This represents a significant recovery for Class Members  The strength of this settlement is further evidenced by the fact that KCC received a significant participation rate, **zero valid**

---

[3] This sum is calculated by starting with the Common Fund of $275,000, subtracting class counsel's fees of $68,750, subtracting class counsel's costs of $12,000, subtracting the cost of notice at an estimated $42,500, subtracting the incentive award of $5,000 to each Plaintiff, and dividing the remainder ($141,750) by the 325 Class Members who submitted valid Claims.   Friedman Decl. ¶ 9.

**opt outs and zero objections to the settlement, while reaching Class Members with Direct Mail Notice, in addition to Publication Notice**. This is an outstanding settlement that should be given final approval.  There is no reason for any other result to be reached.

## II.    STATEMENT OF FACTS

### A.    Factual Background

OCO is a manufacturer of dental implants and attachment systems, as well as a provider of dental implant courses.  OCO also maintains a with products and courses advertised.  During the Class Period, OCO sent 3,847 facsimiles in connection with its marketing campaigns.  *See* Friedman Decl., ¶ 7.  Plaintiffs' operative Complaint alleges OCO violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA") by sending unsolicited facsimiles without obtaining "prior express consent," and without the proper opt-out notice.  Plaintiffs contend they and the Class are entitled to statutory damages pursuant to the TCPA. OCO has vigorously denied and continues to deny that it violated the TCPA, and denies all charges of wrongdoing or liability asserted against it in the Action.

### B.    Proceedings to Date

#### 1.    The Ryoo Action.

On September 2, 2016, Ryoo filed a Class Action Complaint in *Ryoo Dental, Inc. v. OCO Biomedical Inc.*, Case No. 8:16-cv-01626 (C.D. Cal.) ("Ryoo Action)." Ryoo alleged a cause of action for unintentional and intentional violations of the TCPA based on unsolicited facsimile advertisements. Ryoo sought $500 per violation and $1,500 for each intentional violation, as well as injunctive relief. Ryoo's claim was brought on behalf of a class of individuals who allegedly received from OCO unsolicited facsimile advertisements. (Dkt. No. 1.) On November 17, 2016, OCO answered Ryoo's Complaint and pleaded numerous affirmative defenses. (Dkt. No. 13.) Ryoo and OCO submitted a joint proposed scheduling plan. (Dkt. No. 19.) On January 13, 2017, the Court ordered private mediation. (Dkt 21.)

### 2.  The Marcus Action.

On March 18, 2016, Marcus filed a Class Action Complaint in *Richard Marcus v. OCO Biomedical Inc*., Case No. 3:16-cv-01519-AET-LHG (D. N.J.) ("Marcus Action") for alleged violations of the Telephone Consumer Protection Act. Schmierer Decl., par. 5. On May 5, 2016, Defendant filed an answer to the complaint pleading numerous defenses. *Id.*, par. 6. On September 13, 2016, Plaintiff served: (i) Request for Admissions; (ii) First Set of Requests for the Production of Documents; and (iii) First Set of Interrogatories. *Id.* par. 12. On October 24, 2016, the Defendant served its responses to this discovery. *Id.* par. 13. The parties met and conferred concerning Defendant's production and participated in a discovery telephone conference with Magistrate Judge Goodman on November 16, 2016. *Id.* par. 16-17. Plaintiff served documents responsive to February 10, 2017, Defendant filed a motion for summary judgment. *Id.* par. 25.

### 3. Mediation.

Because of the similarity in the classes pleaded in the Ryoo Action and the Marcus Action, Plaintiffs agreed to mediate both actions together and work jointly going forward. Lehrman Decl., par. 13. Therefore, the Parties attended all-day mediation with the Honorable Hon. Carl J. West (Ret.) of JAMS on March 3, 2017. *Id.* The Parties did not resolve the case at the all-day mediation, but with continued assistance from Judge West reached this Settlement. *Id.* As part of the proposed settlement, the Parties agreed to seek the transfer of the Marcus Action to the Central District of California and for Marcus to be consolidated with the instant action. *Id.* As set forth below, Plaintiffs request that the Court approve the Settlement.

### C.  Statement of Facts

#### 1.  The Settlement Class

##### a.  The Settlement Class

The "Settlement Class" is defined in the Agreement as follows:

> All persons or business entities who were sent a telephone

facsimile message of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of OCO Biomedical, Inc. on or after March 18, 2012.

Agreement § 10.7, p. 2.

### b.   Class Membership Determination

1.    The Settlement Class consists of all persons who were sent an unsolicited facsimile by OCO during Class Period, as stated above.  Counsel for OCO Biomedical provided KCC a zip file containing the names, addresses, and fax numbers of 3,847 Class Members.  KCC performed 2 rounds of reverse lookups to retrieve the name and address information for these records.  A total of 2,181 unique records returned with a valid mailing address.

### 2.   *Settlement Payment*

Under the Proposed Settlement, OCO agrees to establish a Settlement Fund in the amount of $275,000 (Agreement § 10.35, p. 4) in order to fund the following: (1) providing notice to Class Members; (2) providing settlement checks to Class Members entitled to receive a settlement check; (3) creating and maintaining the Settlement Website; (4) maintaining a toll-free telephone number; (5) providing CAFA notice (Agreement § 8.3, p. 6) (6) to pay the proposed $5,000 Incentive Payment to the Plaintiff (Agreement § 13.6, p. 8); and (7) payment of the proposed Attorneys' Fees of $68,750 (25% of the Settlement Fund) and litigation costs of up to $12,000 (Agreement § 13.5, p. 8).  Any funds remaining from uncashed checks and similar leftover funds a *cy pres* distribution shall be paid to Medical Aid for Children of Latin America, Inc.[4]  (Agreement § 10.35.2, p. 5.)

---

[4] MACLA is a 501(c)(3) not-for-profit organization that for every year since 1985 has been sending volunteer medical and surgical personnel for 2-3 weeks to the Dominican Republic to perform for underprivileged children and adults free surgeries to correct deformities such as cleft lips and palates.

### 3.   Monetary Benefit to Class Members and Class Notice

The Settlement Agreement provides for $275,000 in cash benefits (minus Settlement Costs, attorney's fees, and litigation costs) to Class Members on a pro rata basis after the claims period.  There are approximately 2,181 Class Members with unique fax numbers that received facsimiles from OCO.  Pursuant to the Agreement, the Claims Administrator provided notice via mail or email within 35 business days of the Preliminary Approval Order.  (Agreement § 12.2, p. 6.).  Claims Forms were also made available on the Settlement Website.

The Claims Period ended March 30, 2018, which is 130 days after the Preliminary Approval Order was issued.  (Agreement § 10, pp. 8-9), and the opt out and objection deadline was set for March 30, 2018. Dkt. No. 39.  To date, there have been 325 valid Claims made.  Friedman Decl. ¶ 8.  The Class Members who file a Claims Form and do not Opt Out and/or Object will each receive a pro-rata share.  After fees, costs and administration expenses, there will be approximately $141,750 in available funds to be distributed to the Class. Friedman Decl. ¶ 9.

## III.   ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL

The Claims Administrator's compliance is described below.

### A.   CAFA Notice

The CAFA notice was mailed by Defendant in compliance with the § 3.4 of the Settlement Agreement. Hack Declaration ¶.  Counsel have received no communications from any state Attorney Generals' Offices.

### B.   Direct Mail Notice Provided

KCC complied with the notice procedure set forth in the Preliminary Approval Order.  Dkt. No. 39.  As required by the Preliminary Approval Order, KCC mailed individual notices by direct mail or email to the settlement Class Members that included a summary of the Settlement's terms.  Hack Decl., ¶ 2-9 Ex C.  The direct mail notice also informed the Class Members of the Settlement

Website address: (http://ryoodentalocosettlement.com/) and the Claims Administrator's toll-free telephone, where Class Members could obtain further information about the Settlement and also make a claim. *Id*. ¶ 3.

Counsel for OCO provided KCC a zip file containing the names, addresses, and fax numbers of 3,847 Class Members. KCC performed 2 rounds of reverse lookups to retrieve the name and address information for these records. A total of 2,181 unique records returned with a valid mailing address. On January 29, 2018, KCC mailed a Notice Packet to 2,181 Class Members.

KCC also sent Email Notice to 41 Class Members who had a valid email address. To date, 268 unique Class Members had their Notice Packets returned as undeliverable. KCC ran a search for an updated address for Class Members who's Notice Packet was returned as undeliverable, and updated and re-mailed the Notice Packet to 84 Class Members. The deadline to submit a Claim Form was March 30, 2018.

To date, KCC has received 280 timely paper claims, 34 timely claims submitted online, and 11 late claims, which will be included as timely. *See* Hack Decl., ¶ 10. Notice was also given by way of targeted publication in Dentistry Today. *Id*. at ¶ 5. There is no reason to believe that this targeted approach does not satisfy the due process requirements of sufficient reach to the Class, especially given the relatively high participation rate.

**C.    <u>Formal Notice Posted On The Settlement Website and Publication</u>**

In compliance with the Preliminary Approval Order, KCC posted on the Settlement Website the detailed and full notice in a question and answer format, the approval papers, the settlement agreement and the long form notice. Hack Decl. ¶ 3. The Settlement Website provided notice of the proposed Settlement to the Class Members, in addition to the Direct Mail Notice.

In addition, on December 27, 2017, KCC caused the Summary Notice to be published in the January edition of *Dentistry Today*. *See* Hack Decl.

### D.   <u>Objections, Opt Outs, and Settlement Payouts</u>

Class Members were provided with significant time to review the Settlement, make timely opt outs and objections.  After this time period had lapsed, KCC has reported that, to date, there were zero opt outs and zero objectors to the Settlement. Friedman Decl. ¶ 8.  The deadline to submit a Request for Exclusion or Object was March 30, 2018.  The fact that there were not only zero objections, but zero opt outs highly supports the adequacy of the proposed Settlement.  *Id*.  *See In re Diamond Foods, Inc*., 2014 U.S. Dist. LEXIS 3252, *9 (N.D. Cal. Jan. 10, 2014) ("Also supporting approval is the reaction of class members to the proposed class settlement.  After 67,727 notices were sent to potential class members, there have been only 29 requests to opt out of the class and no objection to the settlement or the requested attorney's fees and expenses.").

### 1.   Settlement Checks and Credits

The net Settlement Fund available to pay Class Members is $275,000, which was determined by subtracting the anticipated Class Representative incentive award of $5,000.00, Class Counsels' requested fees of $68,750, Class Counsels' litigation expenses of up to $12,000, and the Settlement Administration costs from the Settlement Fund of $275,000.    Friedman Decl. ¶ 9.  This sum shall be divided by the 325 valid claims submitted by Class Members, which equates to each Claimant receiving approximately $436.15.  Friedman Decl. ¶ 9.

### 2.   Class Representative's Incentive Payment

District Courts in California have opined that in many cases, an incentive award of $5,000 is presumptively reasonable. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-67 (N.D. Cal. Mar. 20, 2015) – finding that "[i]n this district, a $5,000 payment is presumptively reasonable.  *See also In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 942-43 (9th Cir. Feb. 27, 2015) (finding that the District court did not abuse its discretion in approving settlement class in antitrust class action, despite objector's contention that the nine class

representatives were inadequate because their representatives' awards, at $5,000 each, were significantly larger than the $12 each unnamed class member would receive); *In re Toys R Us – Delaware, Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litigation*, 295 F.R.D. 438, 472 (C.D. Cal. Jan. 17, 2014) (finding that request for recovery of $5,000 incentive award for each named plaintiff in consumers' action against children's toy retailer alleging retailer violated the Fair and Accurate Credit Transactions Act (FACTA) by printing more than the last four digits of consumers' credit card numbers on customer receipts, was reasonable; parties' settlement agreement provided for incentive payments of $5,000 to each named plaintiff, those awards were consistent with the amount courts typically awarded as incentive payments).

Pursuant to the Agreement and the Preliminary Approval Order, and subject to Court's final approval, Defendant has agreed that the Plaintiffs may be paid from the Settlement Fund an incentive award of up to $5,000, in recognition of Plaintiffs' service as the Class Representatives.  Agr. § 13.6.  The Court should approve the $5,000 incentive payment to compensate Plaintiffs for their time and efforts in litigating this case on behalf of the Class because it is in in line with the Ninth Circuit's directives in *Radcliffe v. Experian Info. Solutions, Inc.*, 2013 U.S. App. LEXIS 9126 (9th Cir. Mar. 4, 2013).

### 3. Attorneys' Fees and Costs

The Agreement permits Class Counsel to file an application for attorneys' fees, not to exceed 25% of the Settlement Fund (the benchmark in the Ninth Circuit is 25%, *Hanlon*, 150 F.3d at 1029), as well as litigation costs to be paid from the Settlement Fund, not to exceed $12,000.  Agr. § 13.5.  That amount of Attorneys' fees requests ($68,750) and litigation costs (up to $12,000) sought to date by Class Counsel is explained in more detail in Plaintiffs' Fee Brief.  The Court should approve the award of the requested attorneys' fees and costs to compensate Class Counsel for their time and efforts in litigating this case on behalf of the Class and

the named Plaintiff, having obtained good results for the Class.

### 4.    Administrator's Expenses For Notice and Administration

Defendant has agreed to pay all costs of notice and claims administration from the Settlement Fund.  KCC has provided a declaration in support of these costs.  *See* Hack Decl.

## IV.   ARGUMENT

### A.    Final Approval of The Proposed Settlement Is Warranted

The Court has already preliminarily found the requirements of Fed. R. Civ. P. 23 are satisfied.  *See generally* Preliminary Approval Order, Dkt. No. 39.  The relevant factors demonstrate that the proposed Settlement should be finally approved as fair, reasonable and adequate.  Since preliminary approval, Plaintiffs have continued to serve as adequate Class Representatives by reviewing documents and papers in support of motions, including the present motion; and Plaintiffs support final approval of the proposed settlement. Moreover, Class Counsel have also continued to adequately represent the interests of the Class Members and the named Plaintiffs, having, among other things, timely disseminating Class Notice, communicating promptly with class members who contacted class counsel with questions, filing the Fee Brief, and assisting with settlement administration.

"Unlike the settlement of most private civil actions, class actions may be settled only with the approval of the district court."  *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982).  "The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C).  The Court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

"To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: 'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'" *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. The Court must balance against the continuing risks of litigation and the immediacy and certainty of a substantial recovery. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re Warner Communications   Sec. Litig.*, 618 F. Supp. 735, 741 (S.D. N.Y. 1985).

The Ninth Circuit has long supported settlements reached by capable opponents in arms' length negotiations. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit expressed the opinion that courts should defer to the "private consensual decision of the [settling] parties." *Id*. at 965 (citing *Hanlon*, 150 F.3d at 1027 (9th Cir. 1998)). The district court must exercise "sound discretion" in approving a settlement. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), aff'd 661 F.2d 939 (9th Cir. 1981). However, "where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation conducted by capable counsel, it is presumptively fair." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F.Supp. 819, 822 (D. Mass. 1987); *In re Ferrero Liti*g., 2012 U.S. Dist. LEXIS 15174, *6 (S.D. Cal. Jan. 23, 2012) ("Settlements that follow sufficient discovery and genuine arms-length

negotiation are presumed fair.") (citing *Nat'l Rural Telcoms. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

Application of the relevant factors here confirms that the proposed settlement should be finally approved. Notably, this Settlement was reached with the assistance of experienced mediator Judge Carl J. West (Ret.), which shows a lack of collision between the Parties. *See Jones v. GN Netcom, Inc.* (*In re Bluetooth Headset Prods. Liab. Litig.*), 654 F.3d 935, 948 (9th Cir. Cal. 2011). Based on the facts of this case, Class Counsel and the named Plaintiffs agree that this settlement is fair and reasonable; among other things, the settlement will avoid costly and time-consuming additional litigation and the need for trial.

### 1. The Strength of The Lawsuit And The Risk, Expense, Complexity, And Likely Duration of Further Litigation

Defendant has vigorously contested the claims asserted by Plaintiffs in this Action. Although Plaintiffs feel strongly about the merits of the case, there are risks to continuing the Action. Class Counsel understands, despite its confidence in its positions, that there are uncertainties associated with complex class action litigation and that no one can predict the outcome of the case. If the Action were to continue, Defendant would oppose any class certification motion made by Plaintiffs, thereby placing in doubt whether a class could be certified in the Action, and additional substantive challenges to the claims might be raised.

This case is about Defendant's alleged practice of sending unsolicited facsimiles without the proper opt-out notice to Class Members without their prior express consent. Plaintiffs allege that this violates of the TCPA.

In considering the Settlement, Plaintiffs and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation against the benefits to the Class including the significant benefit and the deterrent effects it would have. As a result, Class Counsel supports the Settlement and seeks its Final Approval. Similarly, Defendant believes that it has strong and meritorious defenses

to the action as a whole, as well as to class certification and the amount of damages sought. The negotiated Settlement is a compromise avoiding the risk that the class might not recover and presents a fair and reasonable alternative to continuing to pursue the Action as a class action for alleged violations of the TCPA. What is more, Judge West, who is intimately familiar with the instant litigation as well as the current climate of TCPA litigation as a whole, agrees with the parties.

## 2.     The Amount Offered In Settlement

As set forth above, Defendant has agreed to a common fund settlement in the amount of $275,000. After administration costs, proposed attorney's fees, costs of suit, and the proposed incentive award, Settlement Class Members will collectively receive $141,750 of these available funds. Friedman Decl. ¶ 9. Class Members who made claims will each receive a pro rata share of that sum, in an amount of $436.15 each. *Id*. This is a highly favorable per-person recovery for the Class. Moreover, this outstanding result was achieved without having to subject Settlement Class members to the substantial risks ahead in litigation, which include having to achieve class certification, and surviving a motion for summary judgment premised on Defendant's arguments, including the arguments raised herein regarding Article III standing and Plaintiffs' injuries, among other risks.

The settlement award that each Class Member will receive is fair, appropriate, and reasonable given the purposes of the TCPA, the limitations of class-wide liability, and in light of the anticipated risk, expense, and uncertainty of continued litigation. Although it is well-settled that a proposed settlement may be acceptable even though it amounts to only a small percentage of the potential recovery that might be available to the class members at trial, here, the Settlement provides significant and meaningful relief that is comparable to what the Class Members would receive if Plaintiffs were able to prevail on class certification, took the case

to trial and obtained a judgment.[5] Moreover, Class Members were able to avoid the time, expense and risk associated with bringing their own individual TCPA action, where they would be anticipated to receive a sum on the lower end of the $500-$1,500 in statutory damages awardable under the TCPA.

The relief afforded to the Class Members here is in line with the relief given in other similar TCPA class settlements. Below is a chart of eleven (11) similar TCPA class action settlements which have received approval, including the value to each proposed class member for the respective case.

| Case and No. | Size of Class | Settlement Amount | Value per Class Member |
|---|---|---|---|
| Robles v. Lucky Brand Dungarees, Inc. Case No. 3:10-cv-04846 (NDCA) | 216,000 | $9.9 Million | $100 maximum |
| Adams v. AllianceOne, Inc. Case No. 08-cv-0248 (SDCA) | 5.63 Million | $9 Million | $40 maximum |
| Hartman v. Comcast Business Communications 2:10-cv-00413-RSL (WDWA) | 148,843 | $3.8 Million | $25.53 maximum |

---

[5] *National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather, the percentage should be considered in light of strength of the claims"); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) (court-approved settlement amount that was just over 9% of the maximum potential recovery); *In re Mego Fin'l Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000).

| Case and No. | Size of Class | Settlement Amount | Value per Class Member |
|---|---|---|---|
| Hovila v. Tween Brands, Inc. 09-cv-00491-RSL (WDWA) | 100,000 | $5.33 Million Max | $20 Cash; or $45 Gift Certificate |
| Clark v. Payless Shoesource, Inc. 09-cv-00915-JCC (WDWA) | 8 Million | $6.25 Million | $25 Gift Certificate |
| Cubbage v. The Talbots, Inc. 09-cv-00911-BHS (WDWA) | 18,000 | $1.44 Million | $80 Gift Certificate ($40 Cash Value) |
| In Re Jiffy Lube 3:11-md-02261 | 2.3 Million | $47 Million | $17.29 Gift Certificate ($12.97 Cash Redemption) |
| Bellows v. NCO Financial 07-cv-1413-W(AJB) (SDCA) | Unknown, but in the thousands | $950,000 | $70 |
| Lemieux v. Global Credit & Collection 08-cv-1012-IEG(POR) (SDCA) | 27,844 | $505,000 | $70 |
| Gutierrez v. Barclays Group 10-cv-1012 (SDCA) | 66,100 | | $100 |

| Case and No. | Size of Class | Settlement Amount | Value per Class Member |
|---|---|---|---|
| Arthur v. Sallie Mae, Inc. 10-cv-0198, (WDWA) | | $24.15 Million | Between $20 and $40 |

### 3. Class Members were provided with the best notice possible, which afforded them an opportunity to choose whether to participate in the Settlement

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under the circumstances. Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received." *Silber v. Mabo*n, 18 F. 3d 1449, 1454 (9th Cir. 1994). Final approval of the Settlement should be granted when considering the notice provided to the Class Members, i.e., direct mail or email notice to the majority of the Class, and notice also by highly targeted publication in Dentistry Today. *See* Hack Decl., ¶¶ 3-10; Friedman Decl. ¶ 7.

It is also noteworthy that the settlement received positive responses from Class Members, as illustrated by the relatively high claims rate of 8.5%. Moreover, it is well-settled that a proposed settlement may be accepted where the recovery represents a fraction of the maximum potential recovery. *See e.g.*, *Nat'l Rural Tele. Coop v. DIRECTV, Inc.*, 221 F.R.D 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *In re Global Crossing Sec. ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather, the percentage should be considered in light of strength of the claims"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving a settlement that comprised one-sixth of plaintiffs' potential recovery).

Again, despite this general acceptance, the settlement at issue here results in the Class receiving comparable relief to what they would potentially be able to receive in a judgment. It is an outstanding settlement in every respect. Moreover, given that direct mail notice and publication notice were both used, for reasons that were approved by The Honorable Court at preliminary approval, this was the best notice practicable for the Class Members under the circumstances.

### 4.     The Extent of Discovery Completed

The proposed Settlement is the result of intensive arms-length negotiations, which included several months of discovery into the nature of the practices, and the size of the Class affected by them. The parties also engaged in a full-day mediation session before Judge West. Prior to the mediation, the Parties engaged in both formal and informal discovery surrounding Plaintiffs' claims and Defendant's defenses. The Parties also participated in direct discussions about possible resolution of this litigation, including numerous telephonic conferences, which ultimately resulted in a general understanding of the Settlement terms.

The important information needed in these cases is primarily how many Class Members' were subjected to the practices at issue. This information was obtained through both formal and informal discovery. Thus, the litigation here had reached the stage where "the parties certainly have a clear view of the strengths and weaknesses of their cases." *Warner Communications*, 618 F. Supp. at 745.

Considering that four of the main disputed issues between the Parties are legal (i.e., Did Defendant obtain prior express consent to send the facsimiles?, Did the facsimiles contain the proper opt-out notice?, Did the Plaintiffs suffer an injury? And is a class action maintainable under Fed. R. Civ. P. 23?), and not factual in nature, the Parties have exchanged sufficient information to make an informed decision about settlement. See *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998).

### 5.     The Experience And Views of Class Counsel

"The recommendations of plaintiff's counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). The presumption of reasonableness in this action is fully warranted because the settlement is the product of arm's length negotiations conducted by capable, experienced counsel. *See M. Berenson Co.*, 671 F. Supp. at 822; *Ellis*, 87 F.R.D. at 18 ("that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); 2 Newberg on Class Actions § 11.24 (4th Ed. & Supp. 2002); Manual for Complex Lit., Fourth § 30.42.

Here, it is the considered judgment of experienced counsel that this settlement is a fair, reasonable and an adequate settlement of the litigation. *See* Friedman Decl., ¶ 4-20;Eisenberg Decl. at ¶¶ 15-34; Lehrman Decl. at ¶¶ 5-14, 31; Schmierer Decl. ¶¶ 3-27, 41. Class Counsel are experienced consumer class action lawyers. This Settlement was negotiated at arms' length by experienced and capable Class Counsel who now recommend its approval. *Id.* Moreover, the Settlement was reached after the assistance of Judge West (Ret.). Given their experience and expertise, Class Counsel are well-qualified to not only assess the prospects of a case, but also to negotiate a favorable resolution for the class. *Id.* Class Counsel have achieved such a result here in this TCPA class action, and unequivocally assert that the proposed Settlement should receive final approval. *Id.*

### 6.     The Reaction of Class Members To The Settlement

The fact that there are now zero objections, zero opt valid outs from the Class Members, should say all that needs to be said about the outstanding settlement that was reached here for the Class. *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *Warner Communications*, 618 F. Supp. at 746; *Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 44855, *21 (N.D. Cal. Mar. 31, 2014) (only specific objections or comments from 9 class members, and 239 out of the approximately 8 million class members chose to opt out). There has absolutely zero

resistance to the Settlement. Friedman Decl. ¶ 8; Hack Decl ¶ 11-12.  Moreover, there was a 8.5% take rate on this case, which is higher than typical in these types of cases, and indicates that Class Members were very interested in receiving settlement benefits. Hack Decl ¶¶ 6-10.

## V.   **CONCLUSION**

In sum, the Parties have reached this Settlement following extensive arms' length negotiations, including with the assistance of Judge Carl J. West (Ret.).  The Settlement is fair and reasonable to the Class Members who were afforded notice that complies with due process.  For the foregoing reasons, Plaintiffs respectfully requests that the Court:

- Grant final approval of the proposed settlement;
- Order payment from the settlement proceeds in compliance with the Court's Preliminary Approval Order and the Agreement;
- Grant the Motion For Attorney's Fees, Costs, and Incentive Payment;
- Enter the proposed Final Judgment and Order of Dismissal With Prejudice submitted herewith; and,
- Retain continuing jurisdiction over the implementation, interpretation administration and consummation of the Settlement.


Date: May 21, 2018                    **Law Offices of Todd M. Friedman, PC**

                                                By: /s/ Todd M. Friedman
                                                      Todd M. Friedman
                                                      *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

Filed electronically on this 21st day of May, 2018, with:

United States District Court CM/ECF system

Notification sent electronically on this 21st day of May, 2018, to:

Honorable Judge David O. Carter
United States District Court
Central District of California

Esteban Morales
Mintz Levin Cohen Ferris Glovsky and Popeo, P.C.

s/ Todd M. Friedman
Todd M. Friedman, Esq.