Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard Street, Suite 780
Woodland Hills, CA 91367
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYOO DENTAL, INC. d/b/a RYOO DENTAL and RICHARD MARCUS, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>OCO BIOMEDICAL, INC.,<br><br>Defendant. | Case No.: 8:16-cv-001626-DOC-KES<br><br>**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD**<br><br>Judge: Honorable David O. Carter<br><br>**DATE:**    JUNE 4, 2018<br>**TIME:**    8:30 A.M.<br>**COURTROOM:** 9D<br><br>[Filed and Served Concurrently with Declaration of Todd M. Friedman; Declaration of Ronald J. Eisenberg; Declaration of Seth M. Lehrman; Declaration of Ross H. Schmierer; Declaration of H. Jake Hack [Proposed] Order] |

TABLE OF CONTENTS

I. INTRODUCTION ................................................................1

II. STATEMENT OF FACTS ...................................................3

   A. FACTUAL BACKGROUND .............................................3

   B. PROCEEDINGS TO DATE................................................3

III. ARGUMENT ...................................................................4

   A. The Requested Fee Award Is Fair, Reasonable And Justified .............5

     1. The requested fees resulted from arm's length negotiations.............5

     2. The requested fees are reasonable, fair, and justified  under the
       percentage-of-the-fund method..................................................7

       a. Class Counsel have obtained excellent results for the Class in
         comparison to awards made in similar cases......................8

       b. The risks of litigation support the requested fees ....................10

       c. The skill required and quality of work performed support the
         requested fees.................................................................12

       d. Class Counsels' undertaking of this Action on a contingency-
         fee basis supports the requested fees ..................................13

     3. The requested fee is reasonable, fair, and justified under the
       lodestar method................................................................14

       a. Class Counsels' lodestar is reasonable.....................................15

       b. Class Counsels' hourly rates are reasonable............................16

   B. The Requested Costs Are Fair And Reasonable.................................18

IV. CLASS REPRESENTATIVE'S APPLICATION FOR INCENTIVE
AWARD.............................................................................18

V. CONCLUSION ................................................................20

1

TABLE OF CONTENTS

2

**Cases**

3

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. Mar. 20, 2015) .20

4

*Blum v. Stevenson*, 465 U.S. 886 (1994) ................................................17

5

*Chen v. Allstate Insurance Co.*, 819 F.3d 1136 (9th Cir. 2016) ...............................4

6

*Davis v. City and County of San Francisco*, 976 F.3d 1536 (9th Cir. 1992) ..........17

7

*Dennis v. Kellogg Co.*, 2010 WL 4285011 (S.D. Cal. Oct. 14, 2010) ......................7

8

*Di Giacomo v. Plains All Am. Pipeline*, 2001 U.S. Dist. LEXIS 25532 (S.D. Tex.

9

    Dec. 18, 2001) ...............................................................................16

10

*Fischel v. Equit. Life Assurance Soc'y*, 307 F.3d 997 (9th Cir. 2002) ...................16

11

*Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26,

12

    2007) ......................................................................................15, 16

13

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...........................2, 6, 15

14

*Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011) ....................................18

15

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................9

16

*In re Beverly Hills Fire Litigation*, 639 F. Supp. 915 (E.D. Ky. 1986) .................16

17

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .............6

18

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007)...........19

19

*In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362 (N.D. Cal. 1996)............19

20

*In re Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010) ...............................6

21

*In re Omnivision Techs.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................. passim

22

*In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934 (9th Cir. Feb. 27,

23

    2015) .........................................................................................20

24

*In re Toys R Us – Delaware, Inc. – Fair and Accurate Credit Transactions Act*

25

    *(FACTA) Litigation*,  295 F.R.D. 438 (C.D. Cal. Jan. 17, 2014) ........................20

26

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th  Cir.

27

    1994) ......................................................................................14

28

*Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67 (9th Cir. 1975) ..............................15

*Luna v. Shac*, 122 F.Supp.3d 936 (N.D. Cal. 2015) ................................................12

*Lundell v. Dell, Inc*., CIVA C05-3970 JWRS, 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) ........................................................................................................................7

*Milliron v. T-Mobile USA, Inc*., 2009 WL 3345762 (D.N.J.  Sept. 14, 2009) ..........7

*POM Wonderful, LLC v. Purely Juice, Inc.*, 2008 WL 4351842 (C.D. Cal 2008) .18

*Sandoval v. Tharaldson Emp. Mgmt., Inc*., 2010 WL 2486346 (C.D. Cal. June 15, 2010) ...........................................................................................................................7

*Serrano v. Unruh*, 32 Cal. 3d 621 (1982) ..............................................................17

*Staton v. Boeing Co*., 327 F.3d 938 (9th Cir. 2003) ................................................6

*Vizcaino v. Microsoft Corp*., 290 F.3d 1043 (9th Cir. 2002)..................8, 11, 14, 15

**Statutes**

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*.................3, 9, 12, 14

**Other Authorities**

2 McLaughlin on Class Actions (8th ed.) ..................................................................7

Federal Judicial Center, Manual for Complex Litigation (4th Ed. 2004) ................9

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................2, 6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs move the Court for an award of attorneys' fees, costs and incentive payment as part of this preliminarily approved class action settlement (see Dkt. No. 39) between plaintiffs Ryoo Dental and Richard Marcus ("Plaintiffs") and defendant OCO Biomedical, Inc. (hereinafter referred to as "Defendant" or "OCO").[1] Defendant does not oppose this Motion.  The Settlement Agreement provides for a substantial financial benefit of $275,000 ("Settlement Benefits") to the Settlement Class Members.  Dkt. No. 32-1 Ex. A Settlement Agreement ("SA" or "Agr.") §§ 10.35;[2] Declaration of Todd M. Friedman In Support of Motion for Fees ("Friedman Decl") at ¶¶ 4-9.  The $275,000 Settlement Benefits to be paid by OCO is an all-in, non-reversionary payment.  SA at § 10.35.2.  After the Settlement Costs are deducted from the Settlement Benefits, including the attorneys' fees and costs, claims administration costs and incentive award, the amounts remaining will be available to pay all Approved Claims.  *Id*. at § 10.35.  Each Class Member who submitted a valid claim form will receive a pro-rata award from the Settlement Benefits.  *Id*. at § 10.35.1.  The agreement also provides that Defendant will pay all of the following: (1) all settlement administration costs; (2) attorney's fees in an amount not to exceed 25% of the Settlement Benefits (SA § 13.5); and (3) litigation costs up to $12,000.00.  *Id*.  These fees and expenses will be paid from the $275,000 Settlement Benefits.

On November 21, 2017, the Court granted preliminary approval of the Settlement and its terms enumerated above, observing, that the Settlement appeared reasonable and disclosed no grounds to doubt its fairness.   Dkt. No. 39.  The Court preliminarily approved the fairness of the anticipated notice and administration of the settlement by Kurtzman Carson Consultants, LLC, and an attorneys' fee request

---

[1] Collectively referred to as the "Parties."

[2] Defined terms are intended to have their meaning in the Settlement Agreement.

of 25% of the Common Fund, subject to further scrutiny at Final Approval. *Id*. Federal Rules of Civil Procedure provide that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties agreement." Fed. R. Civ. P. 23.  As noted by Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class, which was approved by this Court (Dkt. No. 32), the Settlement Agreement in this action resulted from extensive arm's length negotiations, including a full-day mediation session before Judge Carl J. West (Ret.) of JAMS.  Friedman Decl ¶ 6. The arm's length negotiations, especially those before Judge Carl J. West (Ret.), serve as "independent confirmation" of the reasonableness of the Settlement's terms including the attorneys' fees, costs, and incentive award sought by this Motion. *See Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1029 (9th Cir. 1998).  Under these circumstances, the Court may give deference to the judgment of the parties regarding the reasonableness of the requested fees.

The reasonableness of the requested fees is also supported by the "percentage of-the-fund" and "lodestar" approach.  The $68,750 in attorneys' fees sought equates to 25% of the $275,000 Settlement Benefits, which falls squarely in line with the Ninth Circuit's benchmark percentage of 25% for attorneys' fee awards in common fund cases, such as the present.  Additionally, Class Counsel have incurred a combined total of 199.6 hours litigating this action for a combined lodestar of $101,345.  *See* Friedman Decl. at ¶¶ 35-38 Ex B; the Declaration of Ronald J. Eisenberg ("Eisenberg Decl.) at ¶¶ 26-27; the Declaration of Seth M. Lehrman ("Lehrman Decl.") at ¶¶ 26-27; the Declaration of Ross H. Schmierer ("Schmierer Decl.") at ¶¶ 34-37.  Through this fee brief, which is unopposed by Defendant, Plaintiffs seek Court approval of the agreed-upon costs and fees as follows: (1) all settlement administration costs, to be paid to the Claims Administrator; (2) attorneys' fees in the amount of $68,750; and (3) litigation costs in an amount of $12,000.  As more thoroughly stated herein and as detailed in the supporting

declaration filed herewith, these sums are fair and reasonable as they resulted from extensive arm's length negotiations and are further supported by the percentage-of-the-fund and loadstar methodologies.

## II.   STATEMENT OF FACTS

### A.   FACTUAL BACKGROUND

OCO is a manufacturer of dental implants and attachment systems, as well as a provider of dental implant courses.  It maintains a website with products and courses advertised at https://www.ocobiomedical.com/.  During the Class Period, OCO sent 3,847 unsolicited facsimiles in connection with its marketing campaigns. *See* Friedman Decl., ¶ 7.  Plaintiffs' operative Complaint alleges OCO violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA") by sending facsimile messages to the telephones without obtaining "prior express consent" or including the proper opt-out notice.  Plaintiffs contend they and the Class are entitled to statutory damages pursuant to the TCPA.  OCO has vigorously denied and continues to deny that it violated the TCPA, and denies all charges of wrongdoing or liability asserted against it in the Action.

### B.   PROCEEDINGS TO DATE

#### 1.  The Ryoo Action

On September 2, 2016, Ryoo filed a Class Action Complaint in *Ryoo Dental, Inc. v. OCO Biomedical Inc.*, Case No. 8:16-cv-01626 (C.D. Cal.) ("Ryoo Action)." Ryoo alleged a cause of action for unintentional and intentional violations of the TCPA based on unsolicited facsimile advertisements. Ryoo sought $500 per violation and $1,500 for each intentional violation, as well as injunctive relief. Ryoo's claim was brought on behalf of a class of individuals who allegedly received from OCO unsolicited facsimile advertisements. (Dkt. No. 1.) On November 17, 2016, OCO answered Ryoo's Complaint and pleaded numerous affirmative defenses. (Dkt. No. 13.) Ryoo and OCO submitted a joint proposed scheduling plan.

(Dkt. No. 19.) On January 13, 2017, the Court ordered private mediation. (Dkt. No. 21.)

### 2. The Marcus Action.

On March 18, 2016, Marcus filed a Class Action Complaint in *Richard Marcus v. OCO Biomedical Inc.*, Case No. 3:16-cv-01519-AET-LHG (D. N.J.) ("Marcus Action") for alleged violations of the Telephone Consumer Protection Act. Schmierer Decl., ¶ 5. On May 5, 2016, Defendant filed an answer to the complaint pleading numerous defenses. *Id.*, ¶ 6. On September 13, 2016, Plaintiff served: (i) Request for Admissions; (ii) First Set of Requests for the Production of Documents; and (iii) First Set of Interrogatories. *Id.* ¶ 12. On October 24, 2016, the Defendant served its responses to this discovery. *Id.* ¶ 13. The parties met and conferred concerning Defendant's production and participated in a discovery telephone conference with Magistrate Judge Goodman on November 16, 2016. *Id.* ¶¶ 16-17. Plaintiff served documents responsive to February 10, 2017, Defendant filed a motion for summary judgment. *Id.* ¶ 25.

### 3. Mediation.

Because of the similarity in the classes pleaded in the Ryoo Action and the Marcus Action, Plaintiffs agreed to mediate both actions together and work jointly going forward. Lehrman Decl., ¶ 13. Therefore, the Parties attended all-day mediation with the Honorable Hon. Carl J. West (Ret.) of JAMS on March 3, 2017. *Id.* The Parties did not resolve the case at the all-day mediation, but with continued assistance from Judge West reached this Settlement. *Id.* As part of the proposed settlement, the Parties agreed to seek the transfer of the Marcus Action to the Central District of California and for Marcus to be consolidated with the instant action. *Id.* As set forth below, Plaintiffs request that the Court approve the Settlement.

## III.   ARGUMENT

Class Counsel respectfully assert that (A) the requested fee award of $68,750 is fair, reasonable, and justified; and (B) the payment of up to $12,000 in costs

1  (currently $8,211.19) is fair and reasonable.  Friedman Decl., ¶¶ 25-26; Eisenberg
2  Decl. ¶27; Lehrman Decl. ¶27; Schmierer Decl. ¶37.

3        **A.**     **The Requested Fee Award Is Fair, Reasonable And Justified**

4        The Federal Rules of Civil Procedure provide that "[i]n a certified class action,
5  the court may award reasonable attorneys' fees and nontaxable costs that are
6  authorized by law or by the parties agreement." Fed. R. Civ. P. 23(h) (emphasis
7  added).  As explained by the Ninth Circuit, "[a]ttorneys' fees provisions included in
8  proposed class action settlement agreements are, like every other aspect of such
9  agreements, subject to the determination whether the settlement is 'fundamentally
10  fair, adequate, and reasonable.'" *Staton v. Boeing Co*., 327 F.3d 938, 963 (9th Cir.
11  2003).  In common fund cases, Courts within the Ninth Circuit have discretion to
12  use one of two methods to determine whether the fee request is reasonable: (1)
13  percentage-of-the-fund; or, (2) lodestar plus a risk multiplier. *Staton*, 327 F.3d at
14  967-68. *See also In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010).
15  "Though courts have discretion to choose which calculation method they use, their
16  discretion must be exercised so as to achieve a reasonable result." *In re Bluetooth*
17  *Headset Prods. Liab. Litig*., 654 F.3d 935, 942 (9th Cir. 2011).

18        Class Counsel maintain the request for attorneys' fees is reasonable based
19  solely upon the arm's length formal negotiations that serve as independent
20  confirmation of the fairness of the settlement, including attorneys' fees. *See Hanlon*,
21  150 F.3d at 1029.  However, the requested fees are also fully supported under the
22  percentage-of-the-fund and lodestar approach, which Class Counsel offer as an
23  additional and optional means of cross-checking the requested fees.

24        **1.**     **The requested fees resulted from arm's length negotiations**

25        While attorneys' fee provisions included in class action settlements are
26  subject to the determination of whether the provision is fundamentally fair, adequate
27  and reasonable, the Ninth Circuit has opined that "the court's intrusion upon what is
28  otherwise a private consensual agreement negotiated between the parties to a lawsuit

must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)) (emphasis added). *See also Lundell v. Dell, Inc.*, CIVA C05-3970 JWRS, 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006).

In *Hanlon*, the Ninth Circuit went on to state that where settlement terms, including attorneys' fees, are reached through formal mediation, the Court may rely upon the mediation proceedings "as independent confirmation that the fee was not the result of collusion or a sacrifice of the interests of the class." *Hanlon*, 150 F.3d at 1029. *See also Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("the participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties"); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *Dennis v. Kellogg Co.*, 2010 WL 4285011, at *4 (S.D. Cal. Oct. 14, 2010) (the parties engaged in a "full-day mediation session," which helped to establish that the proposed settlement was noncollusive). *See also* 2 McLaughlin on Class Actions, § 6:7 (8th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion").

Here and as previously stated in Plaintiffs' Motion For Preliminary Approval of Class Action Settlement and Certification of Settlement Class, which this Court has approved (Dkt. No. 32), the Settlement Agreement resulted from extensive arm's length negotiations. Friedman Decl. ¶ 6. More specifically, the Parties attended a full-day mediation session with the Honorable Judge Carl J. West (Ret.), where the Parties did not resolve the case at the all-day mediation, but with continued

assistance from Judge West reached this Settlement. *Id.* The parties had also conducted extensive informal and formal discovery surrounding Plaintiffs' claims and Defendant's defenses. Under these circumstances, the Court may give deference to the mediation proceedings and the judgment of the Parties regarding the reasonableness of fees. However, the requested fee is wholly supported by the both the percentage-of-the-fund and lodestar methods, which the Court may employ as a means of assessing the reasonableness of the requested fee.

### 2. The requested fees are reasonable, fair, and justified under the percentage-of-the-fund method

Courts consider a number of factors to determine the appropriate percentage of the fund to awarding as attorneys' fees in a common fund case including: (a) the results achieved; (b) the risk of litigation; (c) the skill required and the quality of work; (d) the contingent nature of the fee; and, (e) awards made in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047, 1048-1050 (9th Cir. 2002). The "benchmark" percentage for attorney's fees in the Ninth Circuit is 25% of the common fund with costs and expenses awarded in addition to this amount. *Vizcaino*, 290 F.3d at 1047. "However, in most common fund cases, the award exceeds that [25%] benchmark." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007) (citing *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1998)). Both the *Omnivision* and *Activision* Courts concluded that "Absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%." *Omnivision*, 559 F. Supp. 2d at 1048.

Class Counsel's request for attorneys' fees in the amount of $68,750 equates to 25% of the $275,000 Settlement Benefits (Agr. § 13.5), which falls squarely within the Ninth Circuit's benchmark and is considerably less than more recent precedent. In most cases, the benchmark 25% in attorneys' fees are most often paid from the fund, thereby reducing class members' recovery, as is this case. In addition, the fee request is fully supported by the factors enunciated in *Vizcaino* including: (a)

the results achieved; (b) the risk of litigation; (c) the skill required and the quality of work; (d) the contingent nature of the fee; and, (e) awards made in similar cases.

### a. Class Counsel have obtained excellent results for the Class in comparison to awards made in similar cases

The results obtained for the class are generally considered to be the most important factor in determining the appropriate fee award in a common fund case. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *Omnivision*, 559 F. Supp. 2d at 1046. *See also* Federal Judicial Center, Manual for Complex Litigation, § 27.71, p. 336 (4th Ed. 2004) (the "fundamental focus is on the result actually achieved for class members") (citing Fed. R. Civ. P. 23(h) committee note). Standing alone, this factor supports Class Counsel's fee request.

The settlement secured by Plaintiffs and Class Counsel provides an excellent recovery for Class Members as compared to similar TCPA cases, despite the uncertainty of recovery in TCPA class actions. The Settlement Agreement provides for $275,000 in recovery for the Class. SA § 10.35. Every Class Member who submits a Valid Claim Form will be entitled to a pro rata distribution of the Settlement Benefits. SA § 10.35.1.

As of May 21, 2018, there are approximately 325 Class Members who have submitted Valid Claims. *See* the Declaration of the Class Action Administrator, H. Jake Hack ("Hack Decl.") at ¶10. This translates to approximately $436.15 per Class Member who submitted a Valid Claim Form. Friedman Decl. ¶ 9.

The settlement amount to class members is greater than numerous similar TCPA class action settlements which have been approved by courts within the Ninth Circuit and California in particular. Below is a chart of eleven (11) similar TCPA class action settlements which have received approval, including the value to each proposed class member for the respective case.

| Case and No. | Size of Class | Settlement Amount | Value per Class Member |
|---|---|---|---|
| Robles v. Lucky Brand Dungarees, Inc.<br>Case No. 3:10-cv-04846 (NDCA) | 216,000 | $9.9 Million | $100 maximum |
| Adams v. AllianceOne, Inc.<br>Case No. 08-cv-0248 (SDCA) | 5.63 Million | $9 Million | $40 maximum |
| Hartman v. Comcast Business Communications<br>2:10-cv-00413-RSL<br>(WDWA) | 148,843 | $3.8 Million | $25.53 maximum |
| Hovila v. Tween Brands, Inc.<br>09-cv-00491-RSL<br>(WDWA) | 100,000 | $5.33 Million Max | $20 Cash; or<br>$45 Gift Certificate |
| Clark v. Payless Shoesource, Inc.<br>09-cv-00915-JCC<br>(WDWA) | 8 Million | $6.25 Million | $25 Gift Certificate |
| Cubbage v. The Talbots, Inc.<br>09-cv-00911-BHS<br>(WDWA) | 18,000 | $1.44 Million | $80 Gift Certificate<br>($40 Cash Value) |
| In Re Jiffy Lube<br>3:11-md-02261 | 2.3 Million | $47 Million | $17.29 Gift Certificate<br>($12.97 Cash Redemption) |

| Case and No. | Size of Class | Settlement Amount | Value per Class Member |
|---|---|---|---|
| Bellows v. NCO Financial 07-cv-1413-W(AJB) (SDCA) | Unknown, but in the thousands | $950,000 | $70 |
| Lemieux v. Global Credit & Collection 08-cv-1012-IEG(POR) (SDCA) | 27,844 | $505,000 | $70 |
| Gutierrez v. Barclays Group 10-cv-1012 (SDCA) | 66,100 | | $100 |
| Arthur v. Sallie Mae, Inc. 10-cv-0198, (WDWA) | | $24.15 Million | Between $20 and $40 |

The case at bar was resolved for a sum that represents an outstanding result for the Class Members.  This fact strongly supports the fees requested by Plaintiffs.

### b.        The risks of litigation support the requested fees

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *Omnivision*, 559 F. Supp. 2d at 1046-47.  *See also Vizcaino*, 290 F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation of a requested fee).  Throughout litigation and mediation, Defendant raised several defenses.  Indeed, prior to the mediation, the Defendant filed a summary judgment

motion in the Marcus Action arguing: (i) the plaintiffs lacked Article III standing; (ii) harm premised on "intrusion upon seclusion" could not be maintained because the facsimile was received at a place of business; and (iii) the alleged injury was not fairly traceable to the challenged conduct[3]. While both sides strongly believed in the merits of their respective cases, there are risks to both sides in continuing the Litigation. *See* Friedman Decl, ¶ 20. If the Litigation were to continue, challenges would likely be made to any class certification motion made by Plaintiffs, thereby placing in doubt whether certification of a class could be obtained and/or maintained in the Litigation. Also, the summary judgment motion filed before mediation would be argued and heard by this Court.

In considering the Settlement, Plaintiffs and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation against the benefits to the Class including the significant benefit and the deterrent effects it would have. As a result, Class Counsel supports the Settlement and seeks its Approval.

Similarly, Defendant believes that it has strong and meritorious defenses to the action as a whole, as well as to class certification and the amount of damages sought. The negotiated Settlement is a compromise avoiding the risk that the class might not recover and presents a fair and reasonable alternative to continuing to pursue the Action as a class action for alleged violations of the TCPA. Furthermore, Judge West, who is intimately familiar with the instant litigation as well as the

---

[3] In support of its motion, the Defendant relied on a case from this District, namely *ARcare v. Qiagen N. Am. Holdings*, No. CV-16-7638-PA, 2017 U.S. Dist. LEXIS 8344 (C.D. Cal. Jan. 19, 2017). There, the Court dismissed a claim premised on violations of the TCPA's fax provision. The *ARcare* Court concluded that the plaintiff had "not shown that its injury is traceable or related to [Defendant's] alleged violation of the TCPA…had the faxes fully complied with the TCPA, Plaintiff would have lost the same amount of ink, toner, paper and time." Id. at * 8 (internal citations omitted).

current climate of TCPA litigation as a whole, agrees with the parties. The Honorable Court agreed with this reasoning in preliminarily approving the settlement.

Thus, the risks of continued litigation not only depicts the high degree of results obtained for the Class, but also further support the reasonableness of the requested fees.

### c.    The skill required and quality of work performed support the requested fees

The "prosecution and management of a complex [] class action requires unique legal skills and abilities" that are to be considered when evaluating fees. *Omnivision*, 559 F. Supp. 2d at 1047. Class Counsel are experienced class action litigators who have been appointed "class counsel" in numerous TCPA and related consumer class actions. Class Counsel have successfully prosecuted numerous complex consumer class actions, and have secured noteworthy recoveries for those classes. *See* Friedman Decl., ¶¶ 10-17; Eisenberg Decl. ¶¶7-14; Lehrman Decl. ¶¶ 18-19; Schmierer Decl. ¶¶28-29. Class Counsel's proven track record demonstrates not only the quality of work performed, but also the skill required to successfully prosecute large complex class actions.

In the present case, Class Counsel performed significant factual investigation prior to bringing the action as well as engaged in written discovery. Eisenberg Decl. ¶¶17, 23, 26; Lehrman Decl. ¶26; Schmierer Decl. ¶¶ 5-27. Class Counsel participated in extensive formal and informal discovery, and a full-day mediation session where they vigorously negotiated and ultimately secured a highly favorable settlement for the benefit of Class Members. *Id.* Thus, Class Counsels' skill and expertise, reflected in the prompt and significant Settlement, supports the requested fees.

#### d. Class Counsels' undertaking of this Action on a contingency-fee basis supports the requested fees

The Ninth Circuit has long recognized that the public interest is served by rewarding attorneys who undertake representation on a contingent basis by compensating them for the risk that they might never be paid for their work. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for Plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose"); *Vizcaino*, 290 F.3d at 1051 (courts reward successful class counsel in contingency cases "for taking risk of nonpayment by paying them a premium over their normal hourly rates").

Class Counsel prosecuted this matter on a purely contingent basis while agreeing to advance all necessary expenses knowing that Class Counsel would only receive a fee if there were a recovery. *See* Friedman Decl., ¶¶ 18-39; Eisenberg Decl. ¶ 29; Lehrman Decl. ¶ 28; Schmierer Decl. ¶¶4, 38. In pursuit of this litigation, Class Counsel have spent considerable outlays of time and money by, among other things, (1) investigating the actions; (2) conducting extensive discovery on Defendant and third parties; (3) opposing numerous motions to dismiss; (4) negotiating the Settlement in private mediation, and the weeks following mediation; (5) Class counsel will also be required to oversee administration of the Settlement; and, (6) respond to Class Member inquiries.   Class Counsel expended these resources despite the risk that Class Counsel may never be compensated especially in light of the fluctuating interpretations of the TCPA and the difficulty in securing class certification.

Class Counsel here incurred $8211.19 in costs to date and spent 199.6 hours litigating this action.  Friedman Decl., ¶¶ 24-38; Eisenberg Decl. ¶¶ 26-27; Lehrman Decl. ¶¶ 26-27; Schmierer Decl. ¶¶34-37.  Thus, Class Counsels' "substantial outlay,

when there is a risk that none of it will be recovered, further supports the award of the requested fees" in this matter. *Omnivision*, 559 F. Supp. 2d at 1047. As articulated above, the percentage-of-the-fund method is the preferred and most widely used method for determining attorneys' fees in a common fund case. The requested fees are fully supported by the factors enunciated by *Vizcaino* and is commensurate with the excellent results obtained for the Class and is comparable or in excess of settlements in other TCPA cases, as discussed *supra*.

While the requested fees are fully supported by the percentage-of-the-fund method, it should again be noted that the application of the percentage-of-the-fund method is optional and may be applied at the Court's discretion. In addition, the Court may also apply the lodestar method as another optional means of cross-checking the requested fees.

### 3. The requested fee is reasonable, fair, and justified under the lodestar method

A court applying the percentage-of-the-fund method may use the lodestar method as a "cross-check on the reasonableness of a percentage figure." *Vizcaino*, 290 F.3d at 1050. However, a cross-check is optional. *See Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476, at *48 (N.D. Cal. Jan. 26, 2007) (finding that "where the early settlement resulted in a significant benefit to the class," there is no need "to conduct a lodestar cross-check"). If the Court chooses to perform such a cross-check in this matter, it will confirm that an approximately 25% fee award of $275,000 is reasonable.

The first step in the lodestar-multiplier approach is to multiply the number of hours counsel reasonably expended by a reasonable hourly rate. *Hanlon*, 150 F.3d at 1029. Once this raw lodestar figure is determined, the Court may then adjust that figure based upon its consideration of many of the same "enhancement" factors considered in the percentage-of-the-fund analysis, such as: (1) the results obtained; (2) whether fee is fixed or contingent; (3) the complexity of the issues involved; (4)

the preclusion of the other employment due to acceptance of the case; and, (5) the experience, reputation, and ability of the attorneys. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

### a.   Class Counsels' lodestar is reasonable

The accompanying declaration of Class Counsel set forth the hours of work and billing rates used to calculate their lodestar. Plaintiffs' attorneys' work is summarized as follows:

| NAME | HRS. INCURRED | RATE | TOTAL |
|---|---|---|---|
| TODD M. FRIEDMAN | 22.7 | $675 | $15,322.50 |
| ADRIAN R. BACON | 12.7 | $575 | $7,302.50 |
| RONALD J. EISENBERG | 81.3 | $500 | $40,650 |
| SETH LEHRMAN | 36.3 | $500 | $18,300 |
| ROSS H. SCHMIERER | 19.6 | $600 | $11,700 |
| JOANNE M.F. WILCOMES | 26.7 | $300 | $8,010 |
| **TOTAL COMBINED LODESTAR** | 199.6 | | $101,345 |

As described in the accompanying declarations, Plaintiffs' attorneys have devoted a total of 199.6 hours to this litigation to date, and have a total lodestar to date of $101,345, which represents a negative multiplier.   *See* Friedman Decl. ¶¶ 24-38; Eisenberg Decl. ¶ 26; Lehrman Decl. ¶ 26; Schmierer Decl. ¶¶34-36.  These amounts do not yet include an estimate of the additional time that Class Counsel spent seeking final approval of, and implementing the Settlement, including assisting Class Members with claims and overseeing claims administration.

Generally, these tasks require substantially more hours that those estimated. Class Counsels' lodestar will continue to grow as Class Counsel finalizes the settlement process and closes the litigation.[4]   Class Counsels' commitment of time

---

and labor to this case will continue beyond the date of seeking final approval at the hearing scheduled for June 4, 2018.  Friedman Decl., ¶ 35.

Thus, Class Counsel's lodestar is reasonable.  Class Counsel prosecuted the claims at issue efficiently and effectively, making every effort to prevent the duplication of work that might have resulted from having multiple firms working on this case.  In this regard, tasks were reasonably divided among firms to ensure avoiding the replication of work. Further, tasks were delegated appropriately among partners, associate attorneys, paralegals, and other staff according to their complexity such that the attorneys with higher billing rates billed time only where necessary.[5]   In addition, Class Counsels' contemporaneous time records were carefully reviewed.  Friedman Decl., ¶ 37-38 Ex B.

### b.      Class Counsels' hourly rates are reasonable

Similarly, Class Counsels' hourly rates are also reasonable.  In assessing the reasonableness of an attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stevenson*, 465 U.S. 886, 895, n.11 (1994).  *See also Davis v. City and County of San Francisco*, 976 F.3d 1536, 1546 (9th Cir. 1992); *Serrano v. Unruh*, 32 Cal. 3d 621, 643 (1982).  Class Counsel here are experienced, highly regarded members of the bar with extensive expertise in the area of class actions and complex litigation involving consumer claims like those at issue here. *See* Friedman Decl., ¶¶ 10-17; Eisenberg Decl. ¶25; Lehrman Decl. ¶25; Schmierer Decl. ¶¶30-31.   Class Counsel are also very experienced in litigating TCPA cases, including class actions.  *Id.*

According to the well-respected Laffey Matrix, reasonable rates for a Partner of a law firm practicing 11-19 years are calculated at $717 per hour.  Friedman Decl. Ex. A.  Mr. Friedman has dedicated his career to consumer protection litigation,

---

[5] Hours for paralegals and support staff are recoverable but were zeroed for purposes of this Motion.

including class action litigation under the TCPA, FDCPA, EFTA, FCRA, and other consumer protection statutes.  He has secured eight figure class-wide settlements on behalf of millions of consumers nationwide.  Thus, the billing rate for Mr. Friedman of $675 per hour is well within the normal range of fees charged by firms in Southern California for partner work.[6]

Additionally, Adrian R Bacon, who has also contributed to this litigation, has significant experience in litigating consumer class actions, including TCPA class actions, which justifies his hourly rate of $575.  Friedman Decl. ¶¶ 24-38.  Mr. Bacon is a Partner at The Law Offices of Todd M. Friedman, P.C.  He has recently been approved in multiple class action fee motions wherein Mr. Bacon requested an hourly rate of $575 per hour.  Along with Todd Friedman, Mr. Bacon is the primary managing attorney who oversees litigation efforts in the majority of class action litigation at The Law Offices of Todd Friedman.  Such efforts included the drafting of class certification motions in five federal consumer class actions which were certified by contested motion under Rule 23 over the last year, two of which were TCPA actions.  According to the same Laffey Matrix, reasonable rates for a partner/senior associates are calculated at $636 per hour.  *See* Exhibit A to Friedman Decl. Thus, the billing rate for Adrian R. Bacon is well within the normal range of fees charged by firms in Southern California.

In addition to Messrs. Bacon and Friedman's experience, Class Counsel also have extensive experience in class actions, as well as particular expertise in class actions relating to consumer protection and specifically the TCPA.  Class Counsels' combined lodestar of $101,345 is reasonable and supports the requested fees.

---

[6] See *Hartless v. Clorox Co*., 273 F.R.D. 630, 643-44 (S.D. Cal. 2011), aff'd in part, 473 F. Appx. 716 (9th Cir. 2012) (approving hourly rates of $675-795 for partners, up to $410 for associates, and up to $345 for paralegals); *see also POM Wonderful, LLC v. Purely Juice, Inc.*, 2008 WL 4351842 at *4 (C.D. Cal 2008) (finding partner rates of $750 to $475 and associate rates of $425 to $275 reasonable).

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD

17

**B.** **The Requested Costs Are Fair And Reasonable**

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement." *In re Media Vision Tech. Sec. Litig*., 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392 (1970)). The significant litigation expenses Class Counsel incurred in this case were necessary to secure the resolution of this litigation. *See In re Immune Response Sec. Litig*., 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in class action litigation). Based upon the discussion herein, Class Counsel believe that the costs incurred in this matter are fair and reasonable.

Throughout the course of this litigation, Class Counsel had to incur costs totaling $8,211.19. *See* Friedman Decl., ¶¶ 25-26; Eisenberg Decl. ¶27; Lehrman Decl. ¶27; Schmierer Decl. ¶37. These costs were necessary to secure the resolution of this litigation and Class Counsel put forward said costs without assurance that Class Counsel would ever be repaid. Here, the Class Notice informed Class Members that Class Counsel would seek an award of costs up to $12,000 and the Settlement Agreement authorizes a petition of costs for up to $12,000. SA § 13.5. In light of the expenses Class Counsel were required to incur to bring this case to its current settlement posture, the request for costs of up to $12,000 is reasonable.[7]

## IV.   CLASS REPRESENTATIVE'S APPLICATION FOR INCENTIVE AWARD

The proposed Settlement contemplates that Class Counsel will request an Incentive Award in the amount of $5,000 to be distributed to each Class

---

[7] Should these costs rise between now and the date Judgment is entered, counsel reserves the right to supplement their briefing to request additional reimbursement of litigation expenses.

1  Representatives, subject to Court approval.  OCO has agreed not to oppose the
2  request as long as it is not greater than $5,000 per Representative Plaintiff.
3  Agreement § 13.6.

4         District Courts in California have opined that in many cases, an incentive
5  award of $5,000 is presumptively reasonable.  *See Bellinghausen v. Tractor Supply*
6  *Co.*, 306 F.R.D. 245, 266-*67 (N.D. Cal. Mar. 20, 2015) – finding that "[i]n this
7  district, a $5,000 payment is presumptively reasonable.  *See also In re Online DVD-*
8  *Rental Antitrust Litigation*, 779 F.3d 934, 942-*43 (9th Cir. Feb. 27, 2015) – finding
9  that the District court did not abuse its discretion in approving settlement class in
10 antitrust class action, despite objector's contention that the nine class
11 representatives were inadequate because their representatives' awards,
12 at $5,000 each, were significantly larger than the $12 each unnamed class member
13 would receive.  *In re Toys R Us – Delaware, Inc. – Fair and Accurate Credit*
14 *Transactions Act (FACTA) Litigation*, 295 F.R.D. 438, 472 (C.D. Cal. Jan. 17,
15 2014) – finding that Request for recovery of $5,000 incentive award for each
16 named plaintiff in consumers' action against children's toy retailer alleging retailer
17 violated the Fair and Accurate Credit Transactions Act (FACTA) by printing more
18 than the last four digits of consumers' credit card numbers on customer receipts,
19 was reasonable; parties' settlement agreement provided for incentive payments
20 of $5,000 to each named plaintiff, those awards were consistent with the amount
21 courts typically awarded as incentive payments.

22        Plaintiffs assisted in the litigation by providing documents and information
23 to counsel, participating in the motions and settlement discussions, and reviewing
24 and approving the settlement on behalf of the Class.  Plaintiffs acted dutifully in
25 their role as a class representative, and should be awarded this reasonable sum of
26 $5,000 for his part in the litigation.

27 ///
28 ///

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Class Counsel respectfully request that the Court grant Plaintiffs' motion for an award of attorneys' fees in the total amount of $68,750 (25% of the Settlement Benefits), litigation costs of up to $12,000, and Class Representative Incentive Awards of $5,000 per Representative Plaintiff.

Date: May 21, 2018                           Respectfully submitted,

**Law Offices of Todd M. Friedman, P.C.**

By: <u>/s/ Todd M. Friedman</u>
    Todd M. Friedman, Esq.
    *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

Filed electronically on this 21st day of May, 2018, with:

United States District Court CM/ECF system

Notification sent electronically on this 21st day of May, 2018, to:

Honorable Judge David O. Carter
United States District Court
Central District of California

Esteban Morales
Mintz Levin Cohen Ferris Glovsky and Popeo, P.C.

S/Todd M. Friedman
Todd M. Friedman, Esq.